IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff*,<br><br>v.<br><br>MICHAEL L. FISCHER,<br>*Defendant*. | Criminal No.: ELH-14-0595 |

**MEMORANDUM OPINION**

Defendant Michael Fischer, through counsel, has filed an emergency motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 93. He asserts "extraordinary and compelling reasons," based on several serious health conditions that render him vulnerable to complications from COVID-19. *Id.* The motion is supported by a memorandum (ECF 95) (collectively, the "Motion") and several exhibits, including excerpts of Fisher's medical records and disciplinary data.

The government opposes the Motion. ECF 98.[1] It has also submitted exhibits, including an excerpt of the sentencing transcript for Fischer. ECF 98-1. Defendant has replied. ECF 99.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I.   Background**

On December 18, 2014, a federal grand jury sitting in the District of Maryland returned an Indictment against Fischer, charging him with one count of transporting a minor with intent to

---

[1] The government's initial response is docketed at ECF 97. However, the government amended its response (ECF 98) to reflect that the Department of Justice has now taken the position that inmates with health conditions that put them at higher risk for severe illness from COVID-19 are eligible for sentence modification. *See* ECF 98 at 11 n.2.

engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).  ECF 1.  He was arrested on or about January 20, 2015, and has been detained since that time. ECF 7, ECF 10.

Pursuant to a Plea Agreement (ECF 61), Fischer entered a plea of guilty on July 21, 2016 (ECF 59), to an Information (ECF 57) charging him with the offense of travel with intent to engage in illicit sexual conduct, under 18 U.S.C. § 2423(b).  The victim was a 15-year-old girl.

The plea was tendered pursuant to Fed. R. Crim. P. 11 (c)(1)(C).  ECF 61, ¶ 29.  Under the Plea Agreement, the parties agreed to a term of imprisonment ranging from 84 months to 151 months in prison.  *Id.*

The Plea Agreement included a stipulation of facts.  ECF 61 at 9-11.  According to the stipulation, the defendant, who was then 42 years old, met the victim "online" in the summer of 2014.  *Id.* at 9.  The victim told the defendant at the outset that she was 15 years of age.  *Id.*  Nevertheless, on two occasions in August and September 2014, the defendant drove from his residence in Ohio to Maryland, where he had unprotected sexual intercourse with the victim.

The victim was hospitalized in Maryland in September 2014, due to mental health issues.  While she was hospitalized, the defendant attempted to visit the victim with his wife, who was unaware of the relationship; she had been told the victim was the daughter of defendant's friend.

Then, on September 19, 2014, the defendant and his wife drove from Ohio to Maryland.  *Id.* at 10.  And, on September 20, 2014, they transported the victim back to their home in Ohio.  *Id.*  While the victim was in the defendant's home, he engaged in sexual intercourse with her.  His wife was asleep at those times.  *Id*.

When law enforcement contacted the defendant on September 23, 2014, to inquire about the victim, the defendant lied, claiming he did not know where the victim was, and said she might

2

be in Florida.  The defendant subsequently drove the victim to his relative's house in Michigan.  That is where the victim was found on September 26, 2014.  *Id.*[2]

Sentencing was held on April 18, 2017.  ECF 75.  According to the Presentence Report ("PSR," ECF 65), the advisory sentencing guidelines range ("Guidelines" or "U.S.S.G.") called for a period of incarceration ranging between 188 to 235 months.  *Id.* ¶ 86.  However, the Court disagreed, and determined that the Guidelines called for a sentence ranging from 151 to 188 months of imprisonment.  ECF 77.  The Court imposed a term of imprisonment of 120 months, along with a term of supervised release of 20 years. ECF 76.

Despite the defendant's waiver of appeal in the Plea Agreement (ECF 61, ¶ 20), the defendant noted an appeal to the Fourth Circuit. ECF 78.  On September 28, 2017, the Fourth Circuit dismissed the appeal, finding that the waiver of appeal was knowing and voluntary and that there were no meritorious issues. ECF 88.  The mandate issued on October 20, 2017.  ECF 89.

The defendant, who is now 48 years old (ECF 65 at 2), is presently incarcerated at FCI Fort Dix in New Jersey.  With credit for good behavior, the defendant is expected to be released in June 2023.  The government contends that the defendant thus far has served only 53.6% of his sentence.  ECF 98 at 8. The defense suggests that the defendant has "actually served close to 70% of the actual time he's scheduled to spend in a prison setting . . . ."  ECF 95 at 2 n.1; *see id.* at 14.

On March 26, 2019, Fischer petitioned the Warden of FCI Fort Dix for compassionate release.  ECF 98-2.  Fischer, through appointed counsel, filed the Motion on May 8, 2020.  ECF 95.  Fischer had not received a response from the Warden at the time he filed his Motion.

---

[2] Additional facts are included in the government's sentencing memorandum.  ECF 74.

## II. Discussion

### A. Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides one statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018).

4

As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Fischer must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission.  The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under § 3582.  *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

5

## B. Analysis

Fischer moves for compassionate release in light of a "full-blown outbreak" of COVID-19 at FCI Fort Dix and his "significant health conditions, which collectively place him at serious risk of becoming ill from COVID-19." ECF 95 at 1. In particular, Fischer maintains that he suffers from a host of ailments, including nonalcoholic liver disease (probably hepatic steatosis, *i.e.*, fatty liver disease); kidney issues; high blood pressure; mental health issues; an abnormally rapid heartbeat (tachycardia); and severe degenerative disc disease that impairs his mobility. *Id.* at 2, 10-11; ECF 95-2.

The government admits that, pursuant to the recent position of the Department of Justice, defendant's documented medical conditions constitute an "extraordinary and compelling" reason. ECF 98 at 20; *see also id.* at 11 n.2. Moreover, the government acknowledges that Fischer has exhausted his administrative remedies. *Id*. at 18. Therefore, it agrees that the Court has the authority to consider the Motion. *Id*. Nonetheless, the government vigorously opposes Fischer's Motion, asserting that his release would be inconsistent with the Sentencing Commission's policy statement. *Id.* at 19-28. Specifically, the government contends that Fischer's release would contravene U.S.S.G. § 1B1.13(2), which provides that a defendant's sentence reduction is permissible only if "the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g)." *See* ECF 98 at 24.

Despite the government's concession that Fischer's health conditions qualify as a compelling basis for his release, it is necessary to acknowledge the circumstances that have led to Fischer's Motion in order to fully appreciate what is at stake. We are currently "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).

That crisis is COVID-19.[3]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.  *Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).  The virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  And, there is no vaccine, cure, "or proven effective treatment" that is currently available.  *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories…."  *Id.* (citation omitted).

As of May 21, 2020, COVID-19 has infected over 1.5 million Americans and caused nearly 95,000 deaths.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed May 21, 2020).  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), asthma, chronic kidney disease, heart disease, and diabetes *each* increase the risk of complications from COVID-19.  *See Coronavirus Disease 2019 (COVID-19), At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

In addition, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life …."  *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020).  As a result, for a significant period of time, life as we have known it came to a halt.  In some jurisdictions, businesses are beginning to reopen; in many others, however, schools and businesses remain shuttered, either entirely or partially.

---

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

7

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). But, social distancing is particularly difficult in the penal setting. *Seth*, 2020 WL 2571168, at *2. But, prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *See Seth*, 2020 WL 2571168, at *2; *Cameron*, 2020 WL 2569868, at *1. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

On March 23, 2020, the Center for Disease Control ("CDC") issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. And, the BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. *See* ECF 98 at 15-17 (detailing measures that BOP has implemented to combat COVID-19). Nevertheless, as in the community at large, the virus persists. As of May 22, 2020, the BOP reported that 1,567 inmates and 194 staff tested positive for COVID-19 and 159 inmates have died from the virus. *See COVID-19*, FED. BUREAU OF PRISONS,

https://bit.ly/2XeiYH1.  With respect to FCI Fort Dix, 22 inmates and one staff member are or were infected.  *See id*.

The sufficiency of the BOP efforts to contain the virus is hotly contested.  Fischer questions the accuracy of the BOP's data, positing that the BOP's data underestimates the true number of active COVID-19 cases at FCI Fort Dix.  *See* ECF 99 at 8 & 8 n.5.

On May 4, 2020, the ACLU filed a lawsuit on behalf of inmates incarcerated at FCI Fort Dix, alleging that the institution's response to COVID-19 violates the Eighth Amendment.  *See Wragg v. Ortiz*, 20-cv-5496-RMB, ECF 1 (D. N.J. May 4, 2020).  According to the *Wragg* plaintiffs, most inmates "live in 12-person rooms in buildings that house 200 to 300 people, spending their days crowded into the same TV rooms, phone booths, bathrooms, and mealtime pickup lines."  *Id.* ¶ 1.  There are no single cells at FCI Fort Dix, and the bathrooms at the prison are communal, requiring inmates to share sinks, toilets, and showers.  *Id.* ¶ 81.  Further, the plaintiffs allege in *Wragg* that they have not been provided with adequate cleaning supplies.  *Id.* ¶ 95.  The government contests these allegations.  But, there can be no dispute that coronavirus has entered the prison and is spreading among the inmates.

Notably, the Department of Justice has recognized the unique risks posed to inmates and employees.  It recently adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 should be considered as having an "extraordinary and compelling reason" warranting reduction.  *See* ECF 98 at 11 n.2.

Fischer's various health conditions make him especially susceptible to COVID-19.  He suffers from many of the maladies identified by the CDC as conditions that increase the risk of complications from COVID-19, including liver disease, kidney problems, and hypertension.

Accordingly, Fischer's health conditions qualify as a compelling basis to modify his sentence. That determination is not dispositive, however.

The Court must next determine whether a modification of Fischer's sentence is consistent with the Sentencing Commission's policy statement, particularly its command that a reduction is appropriate only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). To determine whether a defendant is a danger to the community, 18 U.S.C. § 3142(g) directs courts to consider the (1) "nature and circumstances of the offense charged"; (2) the "weight of the evidence against the person"; (3) the "history and characteristics of the person"; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release."

The government maintains that Fischer is a danger to the community, citing the serious nature of his offense—interstate travel with intent to engage in illicit sexual conduct with a minor—and the conduct underlying his conviction. ECF 98 at 24-25. The government also argues that Fischer's incarceration has not mitigated his dangerousness, observing that his medical ailments predated his arrest and yet did not preclude his conduct. *Id.* at 26. Further, the government stresses that early release poses a danger to the community because Fischer has not participated in the BOP's sex offender programs, and the BOP has not yet evaluated if Fischer should be involuntarily committed as a sexually dangerous person. *Id.* at 26-27.

Fischer acknowledges the seriousness of his crime. ECF at 99. But, he argues that he is not a danger to the community. He contends that the terms of his supervised release, including a ban on internet usage, mitigate the likelihood that he will reoffend. *Id.* at 14-15. And, he points out that he requested a transfer to a BOP facility that offered sex offender treatment programs, but the BOP denied his request. *Id.* at 15. The government's contentions regarding civil commitment

10

are without merit, Fischer argues, because he claims that he is not a candidate for civil commitment. *Id.* at 17-18.

As I recognized at Fischer's sentencing, his offense was "a heinous crime." ECF 98-1 at 3. The facts recounted above reflect the depravity of his conduct. Fischer preyed on an obviously troubled teenage girl. Although Fischer's conduct was limited to one victim, it was not isolated; he sexually exploited the victim on multiple occasions. And, he lied about it to law enforcement, to his wife, and to the victim's mother.

Moreover, Fischer asserts that he "has a solid release plan." ECF 95 at 13. The plan calls for him to reside with his wife at their home in Ohio, and for Fischer to "receive follow-up counseling and care." *Id.* at 13-14. But, it is concerning to the Court that the offense occurred, in part, in the defendant's home, while his wife was asleep. And, he traveled from Ohio to Maryland to meet the victim, in the company of his wife, who apparently had no idea about the defendant's conduct.

There are also serious concerns about the "frightening and high risk of recidivism" posed by sex offenders. *McKune v. Lile*, 536 U.S. 24, 34 (2002); *see Smith v. Doe*, 538 U.S. 84, 103 (2003).[4] Indeed, the Supreme Court has remarked on "the high rate of recidivism among convicted sex offenders and their dangerousness as a class," observing that when convicted sex offenders reenter society, "they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune*, 536 U.S. at 33; *see also Belleau v. Wall*, 811 F.3d 929, 934 (7th Cir. 2016) (discussing the rate of recidivism among sex offenders).

---

[4] The defense suggests that Fischer has always accepted responsibility for his conduct. Yet, despite a waiver of appellate rights at his guilty plea, he noted a frivolous appeal.

11

In this context, it is notable that Fischer has not completed either the BOP's Sex Offender Management Program or Sex Offender Treatment Program during his incarceration. Fischer maintains that this should not be held against him because he requested a transfer to a BOP facility that offers such programs, but the BOP denied his request. ECF 99 at 15. To be sure, I cannot assign fault to Fischer. And, I am mindful that he has not incurred any disciplinary infractions (ECF 95-5) and has met regularly with his counselor, case manager, and unit manager. ECF 99 at 18. But, given the gravity of the offense, the Court concludes that Fischer is a danger to the community. *See United States v. Wooley*, No. 6:13-cr-00224-AA, 2020 WL 2490093, at *3 (D. Or. May 14, 2020) (denying compassionate release upon concluding that the defendant posed a danger to society because he had not completed BOP's sex offender treatment programs).

Accordingly, because I find that Fischer poses a danger to the community, he is not eligible for compassionate release under 18 U.S.C. § 3582.

### III.    Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 93).

A separate Order follows.

Date:   May 27, 2020                                      /s/
                                                   Ellen Lipton Hollander
                                                   United States District Judge